IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

GREGORY HILLIARD,

       Plaintiff,      Case No. 3:07 CV 1090

 -vs-

                  MEMORANDUM OPINION

STUART HUDSON, WARDEN,

       Defendant.

KATZ, J.

  This case involves Petitioner Gregory Hilliard's *pro se* petition for writ of habeas corpus. This matter is before this Court on the Report and Recommendation ("R & R") of the United States Magistrate Judge (Docket No. 9), and Petitioner's timely objections to the R & R (Docket No. 12). The Magistrate Judge recommends that the Court deny Hilliard's petition for writ of habeas corpus. (Docket No. 9 at 19). For the reasons below, the Court adopts the Magistrate's R & R in full. Petitioner's writ for habeas relief is hereby denied.

**I. Background**

  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") states that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1) (2006). Under the AEDPA, the applicant has the burden to rebut the presumption of correctness by clear and convincing evidence. *Id*. In *State v. Hilliard*, 2006 WL 2141197, * 1 (2006), the Ohio Court of Appeals for the Ninth District, Summit County, Ohio, made the following findings of fact:

Larry Belton was shot and killed in the early morning hours of October 30, 2004, in his apartment. Akron police immediately began their investigation by speaking with Belton's live-in girlfriend, Sheryl McCalister. McCalister identified the sole female defendant in the apartment, Kristie Guiser. McCalister was also able to identify one of the men present at the time of the shooting by his nickname, Shorty Fats.

Police continued their investigation and discovered that Shorty Fats was a nickname used by Lachurn Terry. In addition, police learned that Guiser was the girlfriend of Daryl Heard, who also went by the alias Petey. As a result, the Akron police began their search for Guiser and Heard, eventually locating them with the help of U.S. Marshals. Upon being arrested, Guiser was interviewed on multiple occasions by Detectives John Bell and Michael Schaeffer. Guiser revealed to the detectives that Terry, Heard, and a man she knew only as Good Game had robbed and killed Belton. Through further investigation, police determined that Good Game was a nickname used by Petitioner. Once police had identified the final suspects, McCalister was shown photo arrays which contained Heard and Petitioner. McCalister positively identified both Petitioner and Heard from the arrays.

As a result of Belton's death, Heard, Guiser, Petitioner, and Terry were indicted on the following counts: one count of aggravated murder in violation of R. C. 2903.01(B); two counts of murder in violation of R. C. 2903.02(B); one count of aggravated robbery in violation of R. C. 2911.01(A)(1); and one count of having weapons under disability in violation of R. C. 2923.13. The charges for aggravated murder, murder, and aggravated robbery each contained a firearm specification. On June 1, 2005, a jury trial commenced against Heard, Petitioner, and Terry. Prior to trial, Guiser had entered into a plea agreement and agreed to testify against the remaining defendants.

During trial, the state primarily relied upon the testimony offered by Guiser and McCalister. McCalister was able to positively identify each of the defendants as having been present at the house the night Belton was killed. She testified that she had a clear view of each of the defendants when they entered the apartment. McCalister continued that once the four entered the apartment, she was forced to kneel behind a recliner, but noted that she could still see Belton, Heard and Petitioner. She stated that Heard and Belton wrestled with one another until Heard called out "Good Game." McCalister continued that she then heard a shot, but did not see who had fired a weapon. McCalister then testified that Terry held her down after Belton was shot, preventing her from aiding him in any manner and obstructing her view of the defendants. McCalister concluded her testimony by noting that others ransacked the house while Terry held her down on the floor.

Guiser's testimony included the following. Petitioner and Heard entered the apartment, displaying guns, in an attempt to rob Belton. Belton began to struggle with Heard. Heard then called out to Petitioner who shot Belton in the hip. Heard and Petitioner then ransacked the apartment, searching for money and valuables.

2

  The state also introduced the testimony of Summit County Chief Medical Examiner Dr. Lisa Kohler. Dr. Kohler testified that Belton died from massive internal bleeding caused by the gunshot wound. Dr. Kohler went on to testify that the bullet that entered Belton had damaged several sections of Belton's bowel, but was a treatable wound. Dr. Kohler concluded her testimony by noting that there was a good possibility that Belton could have survived the wound if he had received prompt medical attention.

  Once the state rested its case, each of the defendants moved for acquittal. Each motion was denied by the trial court. The defense then rested without presenting any evidence and the defendants renewed their motions. The motions were again denied and the matter submitted to the jury. Heard and Petitioner were found guilty of each count in the indictment. Terry was found not guilty of having a weapon under disability and not guilty of the firearm specifications, but guilty of the remaining counts in the indictment. The trial court, thereafter, sentenced the defendants accordingly. Petitioner received an aggregate sentence of life in prison plus three years for the firearm specification. Petitioner has timely appealed his convictions.

*State v. Hilliard*, 2006 WL 2141197, *1 -2 (2006).

This Court adopts the Magistrate's procedural background in its entirety as follows:

**<u>Indictment</u>**

  During the March 2005 term, the Summit County, Ohio, grand jury indicted Petitioner as follows:

| | |
|---|---|
| 1. Count One | Aggravated robbery, as defined in OHIO REV. CODE § 2911.01, is a felony of the first degree. The attendant firearm specification is defined in OHIO REV. CODE § 2941.145. |
| 2. Count Two | Aggravated murder, a special felony as defined in Section 2903.01 of the OHIO REV. CODE , with a firearm specification as to the special felony is described in OHIO REV. CODE § 2941.145. |
| 3. Count Three | Murder, as described in Section 2903.02(B), is a special felony of the first or second degree, with a firearm specification if set forth in OHIO REV. CODE §2941.145. |

(Docket No. 7, Exhibit 1).

  On May 31, 2005, a supplemental indictment charged:

| | |
|---|---|
| 4. Count Four | Aggravated murder with a firearm specification. |
| 5. Count Five | Murder with a firearm specification. |
| 6. Count Six | Murder with a firearm specification. |
| 7. Count Seven | Aggravated robbery with a firearm specification. |

3

| | |
|---|---|
| 8. Count Eight | Felonious assault as defined under section 2903.11(A)(1) of the OHIO REV. CODE , is a felony of the second degree. The firearm specification is defined at OHIO REV. CODE § 2941.145. |
| 9. Count Twelve | Having a weapon under disability, felony of the third degree, as defined under OHIO REV. CODE § 2923.13. |

(Docket No. 7, Exhibit 2).

### Trial Court

Petitioner filed a motion to suppress Kristie Guiser's eyewitness identification on May 20, 2005.  (Docket No. 7, Exhibit 3). Counsel withdrew the motion on June 15, 2005 (Docket No. 7, Exhibit 21 at 6). On June 20, 2005, the prosecutor advised Petitioner of her intention to use prior convictions exceeding ten years. (Docket No. 7, Exhibit 4). On June 28, 2005, the jury rendered the following verdict:

| | |
|---|---|
| Count One | Guilty of aggravated murder and guilty of the firearm specification |
| Count Two | Guilty of murder and guilty of the firearm specification |
| Count Three | Guilty of murder and guilty of the firearm specification |
| Count Four | Guilty of aggravated robbery and the guilty of the firearm specification |
| Count Five | Guilty of felonious assault and guilty of the firearm specification |
| Count Twelve | Guilty of having a weapon under disability. |

(Docket No. 7, Exhibit 5).

On July 1, 2005, Petitioner was sentenced to a definite term of life for the punishment of the crimes of aggravated murder with a firearm specification, murder with a firearm specification and felonious assault, a definite term of ten years for punishment of the crime of aggravated robbery with a firearm specification and a definite term of five years, which is not mandatory, for punishment of the crime of having a weapon under disability (Docket No. 7, Exhibit 6).

### Direct Appeal

Petitioner perfected an appeal in the Court of Appeals for Summit County on July 21, 2005 (Docket No. 7, Exhibit 9). In the merit brief, Petitioner asserted

4

three assignments of error.[1] (Docket No. 7, Exhibit10). The Court of Appeals affirmed the conviction[2] (Docket No. 7, Exhibit 13).

### Supreme Court of Ohio

Petitioner filed a notice of appeal in the Ohio Supreme Court on September 11, 2006 (Docket No. 6, Exhibit 15). In his memorandum in support of jurisdiction, Petitioner, pro se, asserted the claims addressed by the Court of Appeals (Docket No. 7, Exhibit 16). On December 27, 2006, the court denied Petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Docket No. 6, Exhibit 18).

### United States District Court

Petitioner filed a timely Petition, under 28 U. S. C. § 2254, for a Writ of Habeas Corpus (Docket No.1). Respondent objects to the granting of such Writ (Docket No. 7).

(Docket No. 9 at 3-5).

The Magistrate received the case under Local Rule 72.2(b)(2) and recommended denying the writ of habeas corpus. This Court conducts a *de novo* review of the Magistrate's R & R. 28 U.S.C. § 636(b)(1)(C); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001).

## II. Jurisdiction

The AEDPA permits jurisdiction to a federal court to consider a petition for a writ of habeas corpus only when the state court's adjudication of a person placed the person "in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a). Here, Hilliard is

---

[1] The three assignments of error are as follows. First, Petitioner suffered from the ineffective assistance of trial counsel. Second, the jury verdict is against the manifest weight of the evidence. Third, the court erred in denying permission to view the body and by admitting hearsay within hearsay testimony.

[2] The Court of Appeals found that (1) Petitioner's claim of ineffective assistance of counsel lacked merit, (2) Petitioner's conviction was not against the manifest weight of the evidence, (3) any error by the trial court in denying permission to view the body was harmless beyond a reasonable doubt and the statements offered to explain a police officer's conduct while investigating a crime are not hearsay.

in custody because of his conviction in the Summit County Court of Common Pleas. (Docket No. 1). Hilliard alleges that the trial court violated his rights under the Sixth and Fourteenth Amendments of the United States Constitution. Therefore, the AEDPA provides jurisdiction to this Court to issue a habeas writ.

### III. Standard of Review

#### A. Habeas Corpus

The AEDPA governs federal habeas corpus when the state court adjudicates the claims on the merits. § 2254(d). The AEDPA establishes two ways in which a federal court may issue a writ. First, a federal court may issue a writ if the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). Second, a federal court may issue a writ if the state court's decision resulted in an unreasonable determination of facts. § 2254(d)(2).

Under section 2254(d)(1), the term "clearly established federal law" refers to the Supreme Court's holdings. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state courts' decision is "contrary to" the Supreme Court when either the decision contradicts the Supreme Court's holdings or it "'confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from this precedent.'" *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam). A state court's decision unreasonably applies Supreme Court holdings "'if the state court identifies the correct governing legal principle from the Supreme Court but unreasonably applies that principle to the facts' of petitioner's case." *Id*. (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)).

6

**IV. Discussion**

The Magistrate's R & R recommends that the Court deny Hilliard's Petition for Writ of Habeas Corpus.  (Docket No. 9).  Hilliard objects to the Magistrate's R & R.  First, Hilliard objects to the Magistrate's determination that his ineffective assistance of counsel claim lacked merit.  Second, Hilliard objects to the Magistrate's finding that a federal court lacks the power to grant habeas relief based on his criminal conviction being against the great weight of the evidence and that his conviction had sufficient evidentiary support.  Lastly, Hilliard objects to the Magistrate's finding that his claim based on trial court errors in its evidentiary rulings stated a claim based in state law and did not provide a basis for habeas relief.

**A. Ineffective Assistance of Counsel**

Hilliard's ineffective assistance of counsel claim centers on his trial counsel (1) filing and later withdrawing a meritorious motion to suppress; (2) failing to cross-examine a witness on the issue of identification; (3) depriving Petitioner of a speedy trial; and (4) consenting to testimony about prior convictions.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court developed a two prong analysis for determining whether ineffective assistance of counsel violates the Sixth Amendment.  Under the first prong, the defendants must prove deficiency in counsel's performance, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  Under the second prong, the defendant must prove that counsel's deficient performance resulted in prejudice, which "requires showing that counsel's errors were so serious as to deprive the

defendant of a fair trial, a trial whose result is reliable." *Id*. Further, a strong presumption exists that attorney's actions are reasonable and within the range of professional assistance. *Id*. at 689.

### 1. Counsel filed and withdrew a meritorious motion to suppress evidence

Hilliard's first argument of ineffective assistance of counsel focuses on his trial counsel's withdrawal of a "meritorious" motion to suppress Sheryl McCalister's identification of him. According to Hilliard, this resulted in ineffective assistance of counsel for two reasons. First, the motion to suppress had merit and should not have been withdrawn. Second, by making the motion to suppress and later withdrawing it, Petitioner lost his right to a speedy trial. This Court finds that Hilliard's claim of ineffective assistance of counsel based on the withdrawal of a meritorious motion to suppress does not satisfy either prong of the *Strickland* test.

In addressing the merits of the motion to suppress, the state appellate court correctly applied *Simmons v. United States*, 390 U.S. 377 (1968), the United State Supreme Court's standard for assessing a photo array. In *Simmons*, the Court held that the Due Process Clause requires that a conviction be set aside based on pretrial identification by photograph when the procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id*. at 384. *Simmons* also recognizes that the danger of misidentification based on the technique used could be "lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error." *Id.* In *Neil v. Biggers*, the Supreme Court identified the following factors to consider in evaluating the likelihood of misidentification:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

409 U.S. 188, 200-01 (1972).

Here, the state appellate court applied the *Neil* standard when it reviewed the merits of Hilliard's motion to suppress. *State v. Hilliard*, 2006 WL 2141197, * 4. The state court noted that Hilliard's complaint about the photo identification stemmed primarily from the four-month delay and not the "impermissibly suggestive" nature of the identification. *Id.* The court found that McCalister had a clear view of Hilliard during the crime, McCalister's testimony indicated a high degree of attention, and McCalister made a decisive identification of Hilliard. *Id.* The court also recognized that each of the three co-defendants' attorney cross-examined McCalister and all three challenged her credibility, which lessened the danger of misidentification by exposing the potential for errors. The court concluded that these factors outweighed any risk of misidentification based on the four-month delay.

This Court does not find the state's determination "contrary to" or an "unreasonable application" of *Strickland*. Hilliard's trial counsel made a reasonable determination that the motion lacked merit. Hilliard suffered no prejudice from this determination because the trial court likely would not have granted the motion.

Hilliard next claims that his trial counsel denied him the right to a speedy trial by filing the motion to suppress and then withdrawing it on the day of the hearing. Under Ohio's Speedy Trial Act, the state must hold a trial within two hundred and seventy days after the arrest of a defendant charged with a felony. Ohio Rev. Code § 2945.71(C)(2) (West 2008). If the state does not bring the accused to trial within this deadline, then the defense may file a motion to discharge the defendant. § 2945.73(B). This discharge has the effect of barring any further criminal proceedings against the defendant based on the same conduct. § 2945.73(D). Ohio law, however,

9

allows an extension of the time for delays instituted or made by the accused including the filing of a motion. § 2945.72(E).

Hilliard argues that by filing the motion, his trial counsel effectively tolled the running of the clock for purposes of the act and thereby deprived him of a speedy trial guaranteed under the law. Hilliard claims ineffective assistance because had his counsel not filed the motion, the June 20 trial date would have exceeded the two hundred and seventy days set by Ohio law. Hilliard claims the his counsel either did not know he could have filed a motion to discharge Hilliard based on the trial date exceeding the statutory deadline or counsel knew that the case could be dismissed but chose to file the motion with "knowledge that he was prejudicing his client." (Docket No. 12 at 8). Hilliard's trial counsel, however, explained that he initially filed the motion because of legitimate concerns about the identification procedure used by the police. Counsel later withdrew the motion after speaking with the detectives about the procedures used and determining the motion lacked merit.

Any claim by Hilliard that his counsel denied him the right to a speedy trial based on Ohio's Speedy Trial Act does not state a claim in a federal court. *See Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) (claims based solely on an error of state law are not redressable in a federal court). Therefore, this Court's review of Hilliard's claim focuses only on whether his trial counsel's action of withdrawing the motion deprived Hilliard the right to a speedy trial under the Sixth Amendment of the United States Constitution.

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial …." U.S. Const. amend. VI. The Sixth Amendment's speedy trial guarantee begins at "arrest, indictment or other official accusation." *Doggett v. United States*,

505 U.S. 647, 655 (1992).  The right to a speedy trial, however, protects only against delays attributed to the government.  *U.S. v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000) (citing *Barker v. Wingo*, 407 U.S. 514, 529 (1972)).  To determine whether a state criminal proceeding violated a defendant's right to a speedy trial, the United States Supreme Court developed the following four factors to consider: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his rights; and (4) the prejudice to the defendant.  *Barker*, 407 U.S. at 530.  Courts view the first *Barker* factor, the length of the delay, as the "triggering mechanism" to determine if the remaining Barker factors need further investigation.  *Norris*, 146 F.3d at 328 (citing *Barker*, 407 U.S. at 530).  Only if the court finds a prejudicial delay does it become necessary to address the remaining factors.  *Id.* at 326-27.

      Here, the state indicted Hilliard on March 16, 2005.  On March 17, 2005, Hilliard surrendered and police incarcerated him.  The jury trial began on June 20, 2005, for a total delay of ninety-five days.  Petitioner's trial counsel filed the motion to suppress on May 20, 2005 and the trial judge set a hearing on the motion for June 15, 2005.  The delay of twenty-six days during which the motion to suppress was pending cannot be attributed to the government and does not count against the government.  Hilliard argues that had his trial counsel not filed the motion to suppress, the additional twenty-six days would have counted against the government and would have violated his right to a speedy trial.

      Even if the twenty-six days are included in the total delay for purposes of the Sixth Amendment's right to a speedy trial, this Court does not find a delay of ninety-five days as prejudicial.  *See United States v. White*, 985 F.2d 271, 275 (6th Cir. 1993) (six and one half month

11

delay not prejudicial). Trial counsel's withdrawal of the motion, therefore, did not deprive Hilliard of his Sixth Amendment speedy trial right.

### 2. Failed to cross-exam witness on the issue of identification

Hilliard next objects to the Magistrate's finding that his trial counsel acted reasonably in cross-examining Sheryl McCalister and that Hilliard suffered no prejudice from his trial counsel's decision not to directly challenge McCalister's identification of Hilliard. (Doc. 9 at 10). Hilliard alleges that because his trial counsel did not cross-exam McCallister about her inability to identify him accurately in a photographic array, trial counsel performed ineffectively. While the trial counsel may have avoided directly questioning McCallister about her identification of Hilliard, trial counsel did cast doubt on McCallister's credibility as a witness. Counsel focused his cross-examination on the fact that McCallister did not directly witness the murder, had faulty memory regarding the circumstances of the murder, and that McCallister suffered stress during the murder, which might have affected her ability to remember. This Court agrees with the R & R and concludes that the decision not to cross-exam McCallister in regards to her identification of the Hilliard amounted to a strategic choice by the trial counsel to downplay the identification of Hilliard and his alleged role in the crime.

Hilliard fails to establish that the decision not to challenge McCallister's identification prejudiced him. First, other evidence of guilt existed to convict Hilliard. Second, had trial counsel cross-examined McCallister about the identification it could have reinforced and strengthened the identification in the minds of the jury, rather than raise questions of doubt about McCalister's identification.

### 3. Trial counsel failed to object to violations of the Speedy Trial Act

12

Hilliard's argument that trial counsel failed to object to Ohio's Speedy Trial Act does not establish a claim for federal habeas corpus. *See Norris*, 146 F.3d at 328.  This Court adopts the Magistrate's finding that the state court's decision regarding Hilliard's speedy trial guarantee was not contrary to or an unreasonable application of clearly established federal law. (Docket No. 9 at 14).  As discussed earlier, any delay in Hilliard's trial did not violate his Sixth Amendment right to a speedy trial; therefore, trial counsel's failure to object did not prejudice Hilliard's federal constitutional right.

### 4. Trial counsel failed to stipulate to Petitioner's prior convictions

Hilliard next argues that his trial counsel's failure to stipulate to prior convictions rendered counsel's performance ineffective.  To support a criminal conviction under the Fourteenth Amendment's due process clause, every fact necessary to constitute the offense charged requires proof of that fact beyond a reasonable doubt.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  One element of the offense of having a weapon under a disability requires the state to prove a prior conviction beyond a reasonable doubt.  Ohio Rev. Code § 2923.13(A) (West 2008).  Ohio law also does not require either the state or the trial court to accept a defendant's stipulation to a prior conviction.  *State v. Smith*, (1990), 68 Ohio App.3d 692, 695, 589 N.E. 2d 454, 457 (1990).  Here, the prior convictions were a necessary element of the case and even if trial counsel attempted to stipulate to them, the state or the trial court would not have been required to accept the stipulation.  Under these circumstances, trial counsel's decision did not amount to ineffective assistance of counsel and Hilliard cannot show prejudice because neither the state nor the trial court had to accept any stipulation made by counsel.

### B. Manifest weight of the evidence and sufficiency of the evidence

13

Hilliard objects to the Magistrate's finding that his state court conviction did not go against the great weight of the evidence and that the federal district court had no power to grant habeas relief on that ground.  (Docket No. 9 at 18).   In his objections to the R & R, Hilliard appears to use the terms "manifest weight of the evidence" and "sufficiency of the evidence" interchangeably.  The two terms, however, are legally distinct.  *See Tibbs v. Florida*, 457 U.S. 31, 42-43 (1982) (discussing the legal significance of the distinction between weight of the evidence and sufficiency of the evidence).  As a *pro se* litigant, however, this Court will construe Hilliard's objections liberally and address his claim with respect to the sufficiency of the evidence.  *Boag v. MacDougall*, 454 U.S. 364, 365 (1982).

The standard that governs a federal habeas review of a state court's determination on the sufficiency of the evidence comes from the Supreme Court's holding in *Jackson v. Virginia*, 443 U.S. 307 (1979).  In *Jackson*, the Court held that in determining whether the evidence in the trial court was sufficient to support a conviction, the federal court should ask, "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319.  Further, a federal court will not generally re-assess the credibility of witness.  *Gall v. Parker*, 231 F.3d 665, 286 (6th Cir. 2000).

Viewing the evidence in the light most favorable to the prosecution, this Court cannot conclude that the state appellate court's findings were contrary to or an unreasonable application of  *Jackson*.  Hilliard alleges that the state failed to prove his presence at the scene of the crime. First, Hilliard claims the unreliable witness testimony cannot establish his identity beyond a reasonable doubt.  The appellate court addressed the manifest weight claim first as dispositive to

14

the sufficiency of the evidence claim.  *State v. Hilliard*, 2006 WL 2141197, * 7.  The court concluded that based on the evidence it could not "say that the jury lost its way in convicting Hilliard of aggravated murder."  *Id.* at * 8.  This Court finds the appellate court's decision consistent with *Jackson*.  The appellate court's review of the evidence demonstrated that sufficient evidence existed for the conviction because two witnesses placed Hilliard at the scene of the crime. One of the witnesses, Kristie Guiser, witnessed the shooting.  This Court will not reweigh the credibility of these witnesses.  Next, Hilliard claims that because no physical evidence linked him to the scene of the crime, the identification must be mistaken.  The fact that no physical evidence linked Hilliard to the scene is not dispositive of whether Hilliard was at the scene. Again, two eyewitnesses placed Hilliard at the scene of the crime and the Court concludes that a rational trier of fact could have found that Hilliard was at the scene of the crime beyond a reasonable doubt.

  Alternatively, Hilliard argues that the state did not prove aggravated murder beyond a reasonable doubt.  Ohio Rev. Code § 2903.01 establishes "purposely" as the required specific intent for aggravated murder.  Hilliard argues that based on the witnesses' testimony, the state failed to prove that Hilliard acted "purposely" because the shooting occurred after the men were struggling or wrestling with a firearm. (Docket No.12 at 19-20).  Under Ohio law, however, intent may be inferred based on the use of a firearm.  *See State v. Seiber*, 56 Ohio St.3d 4, 14, 564 N.E.2d 408, 419 (1990).  The state presented evidence during trial that Hilliard and his accomplices planned to rob the victim.  Both of them entered the house with deadly weapons and demanded jewelry.  The victim refused to hand over the jewelry and they shot him.  Further, expert testimony at trial indicated that a strong possibility existed that, had the victim received

15

immediate help, the victim could have survived the wound. Hilliard and his accomplices prevented the victim from seeking immediate medical help. The state presented sufficient evidence to establish that Hilliard acted "purposely" and therefore, the state court's determination was not contrary to or an unreasonable application of clearly established federal law.

### C. Evidentiary Rulings

Hilliard's third ground for objecting to the R & R centers on evidentiary rulings by the trial court. First, Hilliard argues that the trial court erred by "denying defense's request to inspect the body to rebut the identification of defendant." (Docket No. 12 at 23). Hilliard next argues that the trial judge erred by admitting Detective Bell's hearsay within hearsay testimony. Hilliard's third ground for relief alleges that the trial court abused its discretion. As evidence of this abuse of discretion in not allowing the tattoo evidence into trial, Hilliard cites Ohio R. of Evid. 402, which allows admission of all relevant evidence. (Docket No. 12 at 24). As evidence of the trial court's abuse of discretion in allowing hearsay within hearsay testimony, Hilliard cites Ohio R. of Evid. 805. (Docket No. 12 at 25). In both claims Hilliard alleges only an error in state law. However, "'errors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus.'" *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (quoting *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)). Allegations of an error in application of state law provide a basis for habeas relief only if the errors resulted in a "denial of fundamental fairness." *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983). Courts have narrowly construed what constitutes a state violation that denies "fundamental fairness." *Bey*, 500 F.3d at 522 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

16

The state appellate court determined that any error of the trial court in not admitting the tattoo evidence was harmless beyond a reasonable doubt. The appellate court found that trial counsel remained free to introduce evidence of a lack of tattoos during his case-in-chief but failed to introduce such evidence. The fact that Guiser never indicated that she based her identification of Hilliard on the tattoo and chose him from a photographic array meant that evidence of a lack of tattoo served only to impeach Guiser. Cross-examination of Guiser demonstrated the inconsistencies in her pretrial statements and her trial testimony. In reviewing the evidence, this Court finds that any error in state law did not deny Hilliard "fundamental fairness" in trial and therefore no basis exists for habeas review.

On purely hearsay grounds, this Court finds no denial of "fundamental fairness" in allowing Detective Bell's hearsay within hearsay testimony. The state appellate court concluded that the prosecutor did not introduce the statement by Sedi Richardson linking "Good Game" with Hilliard to prove the truth of the matter but offered the statement to explain why the police officers began to investigate Hilliard. States are free to decide the admissibility of hearsay evidence, unless testimonial in nature, which implicates the Sixth Amendment right to confrontation. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). For the admissibility of testimonial statements, the Sixth Amendment requires an unavailable declarant and a prior opportunity to cross-exam. *Id*. The key inquiry becomes whether the statements are testimonial.

In *Crawford*, the Court found it unnecessary to provide a comprehensive definition of testimonial but "the term … applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id*. In *Davis v. Washington*, 547 U.S. 813, 822 (2006), the Court further clarified what constitutes testimonial statements in the

17

context of police interrogations. The *Davis* Court distinguished between interrogations conducted for the primary purpose of enabling police "to meet an ongoing emergency" and non-emergency interrogations conducted "to establish or prove past events potentially relevant to later criminal prosecution." *Id*. The Court held that statements made during emergencies do not qualify as testimonial while statements made during non-emergencies are testimonial. *Id*. Whether Richardson's statement to police qualifies as testimonial under either *Crawford* or *Davis*, remains unclear from these holdings. This Court, however, finds it unnecessary to determine whether Richardson's statement qualifies as testimonial because the Court finds that any potential error was harmless given the totality of all other evidence available at trial. *See Jordan v. Hurley*, 397 F.3d 360, 363 (6th Cir. 2005) (citing *Bulls v. Jones*, 274 F.3d 329, 334 (6th Cir. 2001) (noting that courts review confrontation violations under the harmless error standard).

**V. Conclusion**

For the above stated reasons, Report & Recommendation of the Magistrate Judge is adopted in its entirety. Hilliard's petition for writ of habeas corpus is denied. The court certifies, pursuant to 28 USC 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis on which to issue a certificate of appealability. 28 USC 2253; Fed.R.App.P. 22(b).

IT IS SO ORDERED.

   S/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE